CENTRAL HANOVER BANK AND TRUST COMPANY, as Trustee under a Mortgage Executed by THE ULSTER AND DELAWARE RAILROAD COMPANY under Date of June 1, 1888, Plaintiff, *v.* THE ULSTER AND DELAWARE RAILROAD COMPANY and Others, Defendants.

Supreme Court, New York County, November 20, 1934.

*Larkin, Rathbone & Perry* [*Hornblower, Miller, Miller & Boston, Harold H. Corbin, Carl M. Owen, Harold J. Gallagher, Louis F. Carroll* and *Thomas F. Dougherty* of counsel], for the plaintiff.

*Hughes, Schurman & Dwight* [*Charles E. Hughes, Jr.,* and *Leighton H. Surbeck* of counsel], for the defendants The Ulster and Delaware Railroad Company and others.

*Cadwalader, Wickersham & Taft* [*G. F. Butterworth* of counsel], for defendants Joseph H. Seaman and others.

*O'Brien, Boardman, Conboy, Memhard & Early* [*F. W. H. Adams* and *J. B. Hewitt* of counsel], for defendants Edward Hubert Litchfield and others.

*Middlebrook & Sincerbeaux* [*A. W. Bergren* of counsel], for the defendants William B. Trowbridge and others.

*Thomas L. Ennis,* for the defendant Clifford S. Sims.

*Seybolt & Seybolt,* for the defendant The Wilber National Bank of Oneonta.

LEVY, J. The plaintiff, as trustee for bondholders under a mortgage executed by the predecessor of the defendant The Ulster and

Delaware Railroad Company (hereinafter referred to as the "company" or "railroad"), brings this action for an accounting against the company and its officers, directors and stockholders. The mortgage contains a provision authorizing the trustee to release property from the lien of that instrument, "provided that all real estate or other property forming the consideration for such conveyance or release, or received in exchange, shall be conveyed or assigned to and held by the Trustee for the purposes and on the trusts herein contained in lieu of the property so conveyed or released, and in the same manner in which the same was so held." It also provides that "any money which may be paid for property so conveyed or released and not invested by the Mortgagor in other property which shall come under this mortgage, shall be paid over to the Trustee and shall be invested by the Trustee."

Early in the year 1913 the plaintiff released part of the railroad's property from the lien of the mortgage, in response to the company's request, and accepted in return a conveyance of other property which the company had received from the city of New York as part of the consideration for the railroad's transfer of the released property to the city. The trustee, the court finds, was ignorant of the fact that the railroad had received $1,250,000 in cash from the city as additional consideration for such transfer. The company withheld from the plaintiff the fact of the receipt of the cash and led the latter to believe that the transaction between the railroad and the city consisted *solely* of an exchange of property theretofore covered by the mortgage for other property belonging to the city. The $1,250,-000 obtained by the railroad was kept intact and carried on its books in a special account entitled "Sinking Fund Reserve" for almost ten years, during all of which time the plaintiff remained without knowledge of the fact that the company had obtained money (as well as property) from the city in return for the conveyance to the city of the property which had been released by the plaintiff from the lien of the mortgage. Early in January, 1923, the company distributed the $1,250,000 to its stockholders as a special dividend. It was not until the end of 1925 that the plaintiff learned the true facts in respect to the transaction between the railroad and the city. The present action was commenced in May, 1928, for an accounting in regard to the $1,250,000 and for "a recovery of that portion of that sum necessary to make whole the bondholders represented by" the plaintiff.

The court is of the opinion that the cash received by the railroad as part of the consideration for the conveyance to the city of the property released by the plaintiff from the lien of the mortgage was required, by the express language of the mortgage, either to be invested by the mortgagor in other property coming under the

mortgage or else to be paid over to the trustee. The money received by the railroad constituted a trust fund which it had no right to use for its own purposes or to distribute to its stockholders. The defendants attempt to argue that the money received by the company did not come within the provisions of the mortgage previously quoted, and that it was, therefore, entitled to retain the same, free and clear of the mortgage. The court finds itself unable to agree with the defendants' contentions in this respect. The money obtained from the city clearly constituted a portion of the consideration obtained by the railroad in exchange for the property released from the lien of the mortgage and, therefore, came squarely within the express language of the mortgage.

The defendants also maintain that the Statute of Limitations presents an insuperable obstacle to a recovery by the plaintiff. This contention is likewise without merit. The plaintiff's claim against the railroad is based upon the provisions of a sealed instrument, and the twenty-year Statute of Limitations is, therefore, applicable. Even if it be assumed that the breach of trust occurred in 1913 and that the plaintiff had knowledge thereof at that time, the statute would be no bar, this action having been commenced less than sixteen years later. The court is of the opinion, however, that the breach of trust did not occur until 1923 when the company for the first time committed an overt act in repudiation of the trust by distributing to its stockholders the fund which it had theretofore kept intact. No previous demand for payment of the money had been made upon the railroad. As to the other defendants, this action having been commenced within six years after the distribution to the stockholders, the defense of the Statute of Limitations appears to be equally unavailable to any of them.

The claim that the plaintiff is estopped from recovering in the present action does not find favor with the court. The distribution of the money to the stockholders was not made in reliance upon any representations of the plaintiff, and, even if it had been, the concealment of the true facts from the plaintiff and the latter's ignorance thereof would preclude invoking the doctrine of estoppel. In any event, this doctrine would not be available to the stockholders, who have received moneys properly belonging to the trustee without paying any consideration therefor. Even as to the corporation, it is difficult to justify a claim of estoppel in the light of the fact that the great bulk of the $1,250,000 was distributed to stockholders who were themselves directors and, as such, responsible for the distribution.

For the reasons indicated the court finds that the plaintiff is entitled to judgment. In order that the proper amount of its

recovery as against the respective defendants may be accurately determined, a referee will be appointed to take and state the account.

The findings and conclusions proposed by the several parties have been passed upon, and the plaintiff will submit decision and judgment accordingly.